1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

9    TRUDI HANSEN,                                    )
                                                      )
10                          Plaintiff,                )          2:06-cv-01509-ECR-RJJ
                                                      )
11   vs.                                              )     REPORT & RECOMMENDATION
                                                      )          OF UNITED STATES
12   MICHAEL J. ASTRUE,                               )         MAGISTRATE JUDGE
     COMMISSIONER OF SOCIAL SECURITY                  )     (Plaintiff's Motion for Reversal (#16))
13   ADMINISTRATION,                                  )
                                                      )
14                          Defendant.                )
     _____ )

15

16          This matter came before the undersigned Magistrate Judge on Plaintiff's Motion for Reversal

17   (#16).  Having considered Plaintiffs' Motion (#16), Defendant's Response (#18), Plaintiff's Reply

18   (#20), and the Administrative Record, the Court now makes the following Report and

19   Recommendation.

20                                      **BACKGROUND**

21          This case arises out of the denial of Social Security benefits to Plaintiff Trudi Hansen

22   (Hansen).  Hansen was born on June 29, 1966, and is considered a younger individual with a high

23   school education.  20 C.F.R. §§ 404.1563 and 404.1564.   Hansen applied for Social Security

24   disability insurance benefits on January 3, 2002, claiming the inability to work since May 15, 2000,

25   due to fibromyalgia, chronic fatigue syndrome  (CFS) and interstitial cystitus (IC).  The claim was

26   denied initially, and again upon reconsideration.  A timely written hearing request was filed by

27   Hansen, and a hearing was held on March 10, 2005, by an Administrative Law Judge (ALJ).  At the

28   hearing, the ALJ heard testimony evidence from Hansen, Julie Schultz, and Gwen Keliihoomalu, a

     vocational expert.

1    On March 26, 2005, the ALJ issued his decision, finding Hansen to be not disabled as defined

2    by the Social Security Act.  42 U.S.C. § 401, et seq.  Hansen added new evidence, a Functional

3    Capacity Evaluation conducted by Karen Crawford, P.D., dated June 30, 2005, and requested

4    administrative review by the Appeals Council; however, the request was denied, making the ALJ's

5    findings the final decision.  Hansen filed the instant action in this Court pursuant to 42 U.S.C. §§

6    405(g).

                                    **DISCUSSION**

7

     **I. STANDARD OF REVIEW**

8
          The Social Security Act provides that the reviewing court "shall have power to enter, upon
9
     the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision
10
     of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42
11
     U.S.C. § 405(g).  In deciding "whether to remand a case for additional evidence or simply to award
12
     benefits is within the discretion of the court;" however, remanding the case for further proceedings
13
     is unnecessary when the record is fully developed.  Reddick v. Chater, 157 F.3d 715, 728 (9th Cir.
14
     1998).  The reviewing court must determine whether the ALJ's decision is free of legal error and is
15
     supported by substantial evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The facts
16
     are given a full review to independently determine whether the ALJ's findings were supported by
17
     substantial evidence.  Smolen, 80 F.3d at 1279.
18
          Substantial evidence means "more than a scintilla but less than a preponderance."  Id. (citing
19
     Richardson v. Perales, 402 U.S. 389, 402 (1971); Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10
20
     (9th Cir. 1975)).  "It means such relevant evidence as a reasonable mind might accept as adequate
21
     to support a conclusion."  Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 228 (1938).  Thus,
22
     the reviewing court "must consider the evidence as a whole, weighing both the evidence that
23
     supports and the evidence that detracts from the [ALJ's] conclusion."  Smolen, 80 F.3d at 1279.
24
     "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court
25
     "may not substitute [its] own judgment for that of the ALJ."  Robbins v. SSA, 466 F.3d 880, 882
26
     (9th Cir. 2006).
27

28

**II. THE SOCIAL SECURITY ACT**

To qualify for Social Security disability benefits, a person must demonstrate that a medically determinable physical or mental impairment prevents her from engaging in substantial gainful activity and that the impairment is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423 (d)(1)(a); see Reddick, 157 F.3d at 721. The Social Security Act requires that disability claims be evaluated according to a sequential five-step process. 20 C.F.R. § 404.1520(a); see also Reddick, 157 F.3d at 721; Batson v. Comm'r of the SSA, 359 F.3d 1190, 1194 (9th Cir. 2004); Baxter v. Sullivan, 923 F.2d 1391, 1395 (9th Cir. 1991). If a claimant is found disabled or not disabled at any step in the evaluation process, the review process ends. Reddick, 157 F.3d at 721. If the ALJ cannot determine whether a claimant is disabled  or not disabled at a step, the ALJ will move on to the next step in the process. 20 C.F.R. § 404.1520(a)(4). Before the ALJ moves to step four or five, the ALJ must assess the claimant's residual functional capacity which is used for steps four and five in evaluating the claim. Id. The burden of proof remains with the claimant until step five, where it then shifts back to the Commissioner. Reddick, 157 F.3d at 721 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

At the first step, the ALJ must consider the claimant's work activity, and if the claimant is gainfully employed, the ALJ will determine the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). At the second step, the ALJ must consider the medical severity of the claimant's impairment(s). 20 C.F.R at §404.1520(a)(4)(ii). If a severe impairment or combination of impairments that is severe does not meet the duration requirement, the ALJ will determine the claimant is not disabled. Id. At the third step, the ALJ must consider the medical severity of the claimant's impairment(s) to see if the impairment(s) meets or equals an impairment listed in appendix 1 and meets the durational requirement. If it meets the requirements, the ALJ must find the claimant is disabled. 20 C.F.R at §404.1520(a)(4)(iii). At the forth step, the ALJ must consider an assessment of the claimant's residual functional capacity and past relevant work. 20 C.F.R. at §404.1520(a)(4)(iv). If the ALJ finds that the claimant can still do her past relevant work, the ALJ will find the claimant is not disabled. Id. At the fifth and final step, the ALJ must consider an assessment of the claimant's residual functional capacity and the claimant's age, education, and work

1    experience to determine whether the claimant can make adjustments to do other work.  20 C.F.R.

2    at §404.1520(a)(4)(v).  If the claimant cannot make adjustments to other work, the ALJ will find the

3    claimant is disabled; otherwise, the ALJ will find the claimant is not disabled.  Id.

4           The Court now reviews Hansen's case to determine whether the ALJ's decision is supported

5    by substantial evidence and whether the correct legal standards were applied.  Smolen, 80 F.3d at

6    1279.

7    **III.  THE ALJ'S DECISION**

8           The ALJ made the following thirteen findings:

9           1.  The claimant meets the nondisability requirements for a period of
            disability and Disability Insurance Benefits set forth in Section 216(I)
10          of the Social Security Act and is insured for benefits through the date
            of this decision.

11
            2.  The claimant has not engaged in substantial gainful activity since
12          the alleged onset of disability.

13          3.   The claimant's fibromyalgia, chronic fatigue syndrom, and
            interstitial cystitis are considered "severe" based on the requirements
14          in the Regulations. [20 CFR § 404.1520(c)]

15          4.   These medically determinable impairments do not meet or
            medically equal one of the listed impairments in Appendix 1, Subpart
16          P, Regulation No. 4.

17          5.  The undersigned finds the claimant's allegations regarding her
            limitations are not totally credible for the reasons set forth in the body
18          of the decision.

19          6.  The claimant has the residual functional capacity to occasionally
            sit, stand, walk, bend, kneel, reach, and engage in repetitive motions
20          of the wrists, elbows, shoulders, and ankles.  Further, she is able to
            lift and carry less than 10 pounds, but is unable to squat, climb, drive,
21          push, pull, and lift 10 pounds or more.

22          7.  The claimant is unable to perform any of her past relevant work.
            [20 CFR § 404.1565]
23
            8.  The claimant is a "younger individual." [20 CFR § 404.1563]
24
            9.  The claimant has a "high school education." [20 CFR § 404.1564]
25
            10.  Given her residual functional capacity and relatively young age,
26          transferability of skills is not an issue in this case. [20 CFR §
            404.1568]
27
            11.  The claimant has the residual functional capacity to perform a
28          significant range of light and sedentary work. [20 CFR § 404.1567]

12. Although the claimant's exertional limitations do not allow her to perform the full range of light and sedentary work, using Medical-Vocational Rules 202.20 and 201.27 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform.  Examples of such jobs include work as dispatcher (DOT #239.367-014) (semi-skilled and sedentary) and telemarketer (DOT #299.357-014) (semi-skilled and sedentary).

13.  The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. [20 CFR § 404.1520(g)]

Record at 25-26.  The ALJ determined that Hansen met the criteria for steps one through four.  Id.  The ALJ found that: Hansen was not working; she had severe medically determinable impairments of fibromyalgia, chronic fatigue syndrome, and interstitial cystitis; her impairments were not severe enough to meet or equal the severity of those listed in Appendix 1; and, she was unable to return to any of her past relevant work.  Id.  The ALJ determined that Hansen's residual functional capacity (RFC) allowed her to perform a significant number of jobs in the national economy; therefore, Hansen was not under a "disability."

Hansen, in her Motion for Reversal (#16) argues that: (1) the ALJ committed legal error "by not considering the nature of [her] impairments or the record as a whole in making the disability determination;" (2) legal error was committed by the ALJ when he found her to not be entirely credible for lack of objective evidence; (3) the ALJ failed to give the proper weight to her treating physicians; and (4) the ALJ did not meet the burden of establishing that she was able to do other work.  Pl.'s Mot. Reversal (#16) at 3.  The Court finds that the ALJ committed legal error when calculating Hansen's RFC and evaluating step five, thereby discrediting the medical evidence, Hansen's subjective symptom testimony, and the physicians' opinions.

**A.  Plaintiff's Impairments**

The ALJ failed to consider all of Hansen's impairments as a whole when issuing his decision. The ALJ found Hansen to have fibromyalgia, chronic fatigue syndrome, and interstitial cystitis but did not explain how these impairments, as a whole, affected her overall general health for performing light and sedentary work.  Moreover, SSR 02-2p, Policy Interpretation on the Evaluation of Interstitial Cystitis, was not used by the ALJ to assess Hansen's RFC or analyze how interstitial

1    cystitis may have limited her ability to work.  Although Hansen's interstitial cystitis symptoms were

2    not as severe as her other impairments, "not severe" impairments when combined with other

3    impairments may substantially limit a person's abilities to preform past relevant work or future work.

4    SSR 96-8p.

5              While a "not severe" impairment(s) standing alone may not
               significantly limit an individual's ability to do basic work activities,
6              it may–when considered with limitations or restrictions due to other
               impairments–be critical to the outcome of a claim. For example, in
7              combination with limitations imposed by an individual's other
               impairments, the limitations due to such a "not severe" impairment
8              may prevent an individual from performing past relevant work or may
               narrow the range of other work that the individual may still be able to
9              do."

10   SSR 96-8p at 5 ¶ 2.

11          Interstitial cystitis "is a complex, chronic bladder disorder characterized by urinary frequency,

12   urinary urgency, and pelvic pain."  SSR 02-2p.  The diagnosis for IC is one of exclusion, meaning

13   that "[a] physician must rule out other conditions before making a diagnosis of IC because there is

14   currently no definitive test to identify IC."  Id.  Moreover, the diagnosis of IC includes some or all

15   of the following: (1) "[p]resence of urinary urgency or frequency (day and/or night), either singly or

16   in combination;" (2) "[p]ain in the bladder and surrounding pelvic region;" (3) "[s]uprapubic

17   tenderness on physical examination;" (4) "[g]lomerulations (pinpoint bleeding caused by recurrent

18   irritation) on the bladder wall after hydrodistention on cystoscopy;" (5) "Hunner's ulcers on the

19   bladder wall after hydrodistention on cystoscopy; and, (6) "[a]bsence of other disorders that could

20   cause the symptoms."  SSR02-2p.

21          Hansen argues that the ALJ committed legal error when her testimony was used to establish

22   her disability, but then discredited at step five for lack of objective medical evidence in the record.

23   Record 22-25.  The Court agrees.  The Court finds that the ALJ did not sufficiently explain how

24   Hansen's impairment of interstitial cystitis affected her RFC. Therefore, the RFC finding was not

25   supported by substantial evidence and legal error was committed.

26          The diagnosis for IC is one of exclusion and the record indicates that Hansen had some of

27   the symptoms mentioned above; however, the ALJ failed to address this issue.  The ALJ concluded

28   that since no objective medical evidence existed, the impairments were not severe.  Record 22-24.

On remand, the ALJ, when reevaluating Hansen's RFC and step five, will need to make specific references to the Record to clear up the inconsistencies in the evidence.

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. **The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved**.

SSR 96-8p (emphasis added). The ALJ failed to sufficiently resolve the inconsistencies in the Record. Lastly, because legal error was committed in determining Hansen's RFC, the ALJ will also need to reevaluate step five.

**B. Hansen's Subjective Symptom Testimony**

The Ninth Circuit has found that in "deciding whether to accept a claimant's subjective symptom testimony, the ALJ" must perform the two-step Cotton test and analyze the credibility of the testimony. Smolen, 80 F.3d at 1281; Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986). If the claimant satisfies the Cotton test and no evidence of malingering exists, the claimant's testimony regarding the severity of symptoms may be rejected by the ALJ "only by offering specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1281.

**The Cotton Test**

Under the Cotton test, the claimant "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Smolen, 80 F.3d at 1282 (internal quotations omitted). This is done by having the claimant (1) produce objective medical evidence of an impairment(s); and (2) showing that the impairment(s) may "reasonably be expected to (not that it did in fact) produce some degree of symptom." Id. The claimant is not required to "produce objective medical evidence of the pain or fatigue itself . . .the severity thereof . . .[or] of the causal relationship between the medically determinable impairment and the symptom." Id. "The Cotton test requires only that the causal relationship be a reasonable

1   inference, not a medically proven phenomenon." Id.; see Howard v. Heckler, 782 F.2d 1484, 1488

2   (9th Cir. 1986). Having the claimant show that her symptoms "could reasonably have caused some

3   degree of the symptom . . .reflects the highly subjective and idiosyncratic nature of pain and other

4   such symptoms." Id.

5         In the present matter, by finding Hansen's testimony not entirely credible, the ALJ failed to

6   provide specific clear and convincing reasons for doing so. In addition to providing medical

7   evidence, Hansen testified that she was limited in her ability to work because of the fibromyalgia,

8   chronic fatigue syndrome, and interstitial cystitis. Record at 298, 120, 121, 133, 185-187, 191, and

9   194. The ALJ found that she was impaired but when finding her RFC and analyzing step five, the

10  ALJ stated that her testimony is "disproportionate when she asserts that she cannot perform

11  substantial gainful activity." Record at 22. Hansen provided the ALJ with objective medical

12  evidence and testified that she possessed the pain. Record 318-43. Hansen satisfied the Cotten test.

13  The ALJ did not find that malingering existed, therefore, the ALJ should have pointed to specific,

14  clear and convincing evidence when discrediting her testimony. The ALJ committed legal error

15  when stating that: "[t]he claimant's physical examinations have been consistently normal and there

16  is a glaring absence of objective laboratory findings to support her claim of debilitating impairment."

17  Record at 22.

18        **Credibility of Hansen's Statements**

19        "Once a claimant meets the Cotton test and there is no affirmative evidence suggesting she

20  is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms

21  only if he makes specific findings stating clear and convincing reasons for doing so." Smolen, 80

22  F.3d at 1284; Social Security Ruling (SSR) 96-7p. The ALJ must specifically state the facts in the

23  record that lead to the conclusion that the symptom testimony is not credible. Social Security Ruling

24  (SSR) 96-7p  helps explain the factors that should be considered when assessing the credibility of

25  an individual's statements about pain or other symptom(s). SSR 96-7p. First, the adjudicator must

26  consider whether the claimant has an underlying medically determinable physical impairment(s) that

27  could reasonably be expected to produce the pain or symptoms. Next, the adjudicator must assess

28  "the intensity, persistence, and limiting effects of the individuals's symptoms to determine the extent

1    to which the symptoms limit the individual's ability to do basic work activities." This assessment

2    must be based on a consideration of all of the evidence in the record, including but not limited to:

3    medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions provided

4    by treating or examining physicians and other medical sources; and  statements and reports from the

5    claimant, treating or examining physicians, others having knowledge about the claimant's medical

6    history, "treatment and response, prior work record and efforts to work, daily activities, and other

7    information concerning the individual's symptoms and how the symptoms affect the individual's

8    ability to work."  Id.

9          "While an ALJ may find testimony not credible in part or in whole, he or she may not

10   disregard it solely because it is not substantiated affirmatively by objective medical evidence."

11   Robbins, 466 F.3d at 883.  The adjudicator may not "make a single, conclusory statement that 'the

12   individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" SSR

13   96-7p.  Moreover, the adjudicator may not simply recite factors described in the regulations for

14   evaluating symptoms.

15         In the present matter, the ALJ found Hansen credible at step two, but at step five made the

16   prohibited finding that she was not credible because her testimony was "not substantiated

17   affirmatively by objective medical evidence."  Robbins, 466 F.3d at 883.  The ALJ failed to give

18   specific reasons for discrediting Hansen testimony as required by SSR 96-7p.  Robbins, 466 F.3d at

19   884.  The ALJ committed  legal error by not citing to substantial evidence to discredit Hansen's

20   subjective symptom testimony.  Even though the ALJ may have given some "facially legitimate

21   reasons for his partial adverse credibility finding, the complete lack of meaningful explanation gives

22   [the C]ourt nothing with which to assess its legitimacy."  Robbins, 466 F.3d at 884.

23   **C.  Credibility of Physicians' Opinion**

24         Similar to the analysis of a  claimant's credibility, to discredit a physician's credibility, the

25   ALJ must make "findings setting forth specific, legitimate reasons for doing so that are based on

26   substantial evidence in the record."  Smolen, 80 F.3d at 1285.  The Ninth Circuit has  found that

27   "[b]ecause treating physicians are employed to cure and thus have a greater opportunity to know and

28   observe the patient as an individual, their opinions are given greater weight than the opinions of

1   other physicians." Id.  In the case at hand, the ALJ properly accepted Dr. Boyd's opinion but failed

2   to address many of Hansen's nonexertional limitations.  Record at 23.  On remand, the ALJ will need

3   to discuss Hansen's nonexertional limitations and how they may or may not affect her ability to

4   work.

5   **IV. CONCLUSION**

6          The Court has discretion to either remand the case for additional evidence or for an  award

7   of benefits.  Reddick, 157 F.3d at 728.  If the record is fully developed, remanding the case for

8   further proceedings is unnecessary.  Id.  The Ninth Circuit holds:

9                    In cases where there are no outstanding issues that must be resolved
                     before a proper disability determination can be made, and where it is
10                   clear from the administrative record that the ALJ would be required
                     to award benefits if the claimant's excess pain testimony were
11                   credited, we will not remand solely to allow the ALJ to make specific
                     findings regarding that testimony.  Rather, we will . . . take that
12                   testimony to be established as true.

13   Varney v. Secretary of Health & Human Services, 859 F.2d 1396, 1401 (9th Cir. 1988); see also

14   Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1988) (accepting uncontradicted testimony as true

15   and awarding benefits where the ALJ failed to provide clear and convincing reasons for discounting

16   the opinion of claimant's treating physician).

17         In the present matter, the ALJ failed to provide clear and convincing reasons for discounting

18   opinion and testimony evidence by Hansen.  Moreover, the ALJ committed legal error when

19   calculating Hansen's residual functional capacity and step five; however, the record is not fully

20   developed and it is not clear whether the ALJ would be required to award benfits to Hansen had her

21   testimony been credited.    Therefore, since the record is not fully developed, the case will be

22   remanded to the ALJ to reevaluate Hansen's residual functional capacity and step five.  Further, the

23   Court orders the ALJ to analyze, determine, and sufficiently explain whether to include Dr. Karen

24   Crawford's Functional Capacity Evaluation, pursuant to 42 U.S.C. § 405(g), sentence six, in its

25   analysis, since the ALJ is in the best position to fairly assess the new evidence.

26                              **RECOMMENDATION**

27         Based on the foregoing and good cause appearing therefore,

28         IT IS THE RECOMMENDATION of the undersigned Magistrate Judge that Defendant's

- 10 -

1   Motion for Reversal (#17) be **GRANTED** to the extent that this matter is remanded to the

2   Administrative Law Judge to redetermine Hansen's residual functional capacity and step five

3   pursuant to this Report and Recommendation.

4         IT IS FURTHER RECOMMENDED that the Administrative Law Judge analyze, determine,

5   and sufficiently explain whether to include Dr. Karen Crawford's Functional Capacity Evaluation,

6   pursuant to 42 U.S.C. § 405(g), sentence six.

7   **NOTICE**

8         Pursuant to Local Rule IB 3-2 any objection to this Report and Recommendation must be in

9   writing and filed with the Clerk of the Court **on or before February 9, 2009.** The Supreme Court

10  has held that the courts of appeal may determine that an appeal has been waived due to the failure

11  to file objections within the specified time. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>reh'g denied</u>, 474

12  U.S. 1111 (1086). This circuit has also held that (1) failure to file objections within the specified

13  time and (2) failure to properly address and brief the objectionable issues waives the right to appeal

14  the District Court's order and/or appeal factual issues from the order of the District Court. <u>Martinez</u>

15  <u>v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991); <u>Britt v. Simi Valley United Sch. Dist.</u>, 708 F.2d 452, 454 (9th

16  Cir. 1983).

17        DATED this ___26th___ day of January, 2009.

18

19  .

20

21  ROBERT J. JOHNSTON
    United States Magistrate Judge

22

23

24

25

26

27

28